Olu K. Orange, Esq. , SBN: 213653
ORANGE LAW OFFICES
3435 Wilshire Blvd., Suite 2900
Los Angeles, California 90010
Tel: (213) 736-9900 / Fax: (213) 406-1250
Email: oluorange@att.net

ROBERT MANN, CSB 48293
DONALD W. COOK, CSB 116666
3435 Wilshire Blvd., Suite 2900
Los Angeles, CA  90010
Tel: (213) 252-9444/ Fax: (213) 252-0091
Email: manncook@earthlink.net

Ameena M. Qazi SBN 250404
COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, CALIFORNIA
2180 W. Crescent Ave., Suite F
Anaheim, California  92801
Telephone: (714) 776-1847
Facsimile: (714) 776-8340
email: aqazi@cair.com

Paula D. Pearlman CSB #109038
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, CA 90015
Tel: (213) 736-1031
Fax: (213) 736-1428
Email: paula.pearlman@lls.edu

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUKHSANA CHAUDHRY, MOHAMMAD AFZAL CHAUDHRY, USMA CHAUDHRY, MOHAMMAD UMAR CHAUDHRY, ESTATE OF MOHAMMAD USMAN CHAUDHRY, INTERFAITH COMMUNITIES UNITED FOR JUSTICE AND PEACE, ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA, AND CANGRESS<br><br>*Plaintiffs,*<br><br>vs.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, WILLIAM BRATTON, JOSEPH CRUZ, DAVID ROMO, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY CORONER DEPARTMENT. ANTHONY | Case No.:  CV09-1592 FMC (RZx)<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF FOR:<br><br>1.  VIOLATION OF CIVIL RIGHTS AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 *et seq.*)<br>2.  VIOLATION OF CIVIL RIGHTS SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)<br>3.  VIOLATION OF CIVIL RIGHTS 42 U.S.C.  § 1983, Fourth Amendment (Unreasonable Seizure)<br>4.  VIOLATION OF CIVIL RIGHTS 42 U.S.C.  § 1983, Fourteenth Amendment (Substantive Due Process) |

1

1  CORONER DEPARTMENT, ANTHONY
2  HERNANDEZ, LAKSHMANAN
   SATHYAVAGISWARAN, AND DOES 1
3  THROUGH 10

4              *Defendants.*

5

5. VIOLATION OF CIVIL RIGHTS, 42
   U.S.C. §§ 1983, 1985, 1986
   (Conspiracy to Violate Civil Rights)
6. VIOLATION OF CIVIL RIGHTS 42
   U.S.C. § 1983 Municipal Liability
   Unconstitutional Practice, Custom, or
   Policy (*Monell*)
7. VIOLATION OF CIVIL RIGHTS 42
   U.S.C. § 1983 Municipal (*City of
   Canton*) and Individual Supervisory
   Liability (*Larez*) (Failure to train,
   supervise, discipline)
8. VIOLATION OF CIVIL RIGHTS 42
   U.S.C. § 1983, First Amendment (Free
   Exercise Clause)
9. VIOLATION OF CIVIL RIGHTS 42
   U.S.C. § 1983, Fourteenth Amendment
   (Equal Protection)

SUPPLEMENTAL STATE LAW CLAIMS

10. Negligence
11. Infliction of Emotional Distress
12. Violation of Mandatory Duty (notice)
13. Wrongful Death
14. Conversion/ Trespass to Chattels
15. Violation of Mandatory Duty (Govt.
    Code §11135(a))
16. Violation of Civil Rights (Cal. Const.
    Art. 1 Sec. 4 and 13, Cal. Civ. Code §§
    51, 51.7, 52.1, inter alia.)
17. Assault
18. Battery
19. False Arrest/ False Imprisonment

JURY DEMAND

*(Cal. Code Civ. Proc. §377.11 Declarations
and Death Certificate incorporated & filed
herewith under separate cover as Exhibits
A, B and C to plaintiffs' complaint)*

2

Second Amended Complaint for Damages

**PLAINTIFFS ALLEGE AS FOLLOWS:**

This is a complaint for damages and injunctive relief based upon Federal and State civil rights violations and state torts committed by the CITY OF LOS ANGELES, the LOS ANGELES POLICE DEPARTMENT, the COUNTY OF LOS ANGELES, the LOS ANGELES COUNTY DEPARTMENT OF CORONER and their officials, uniformed peace officers, employees and/or agents. This case is brought pursuant to 29 U.S.C. §§ 794, 794a; 42 U.S.C. §§ 12132, 1983, 1985, 1986, 1988 and California state law. Federal jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 (a)(1-4). The court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). In accordance with the requirements of the California Government Code, the requisite Claims for Damages for Plaintiffs were timely filed with the CITY OF LOS ANGELES AND THE COUNTY OF LOS ANGELES and subsequently rejected.

## JURISDICTION

1. This case is brought pursuant to 29 U.S.C. §§ 794, 794a, 794(a)(b); 42 U.S.C. §§ 12132, 1983, 1985, 1986, 1988 and 12205. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 (1-4). This court also has supplemental jurisdiction over the state claims and over defendants pursuant to 28 U.S.C. § 1367. Jurisdiction is proper over the claims for declaratory and injunctive relief herein via 28 U.S.C. §2201, 2202 and Federal Rules of Civil Procedure 57(d) and 65.

## VENUE

2. The claims alleged herein arose from events or omissions occurring in the County of Los Angeles. Therefore, venue lies in the Central District of California. 28 U.S.C. 1391(b)(2).

## PARTIES
### PLAINTIFFS

3

3.     Plaintiff MOHAMMAD AFZAL CHAUDHRY is the father of now deceased Mohammad Usman Chaudhry and is a resident of the County of Los Angeles, State of California.   Plaintiff MOHAMMAD AFZAL CHAUDHRY is decedent MOHAMMAD USMAN CHAUDHRY'S beneficiary and successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in any action or proceeding on decedent's behalf. MOHAMMAD AFZAL CHAUDHRY sues as an individual in his own right and, pursuant to his Declaration, which was attached to this Complaint as Exhibit B, as successor in interest, heir and legal representative of decedent to seek redress for the deprivation of decedent's rights, including but not limited to decedent's rights under the California Constitution and state law.   Plaintiff MOHAMMAD AFZAL CHAUDHRY is informed and believes that no other person has a superior right to commence an action or proceeding on decedent's behalf.  A copy of decedent's death certificate is attached hereto as Exhibit A. At all times material to this complaint, plaintiff was a private citizen of the State of California, United States of America.

4.     Plaintiff RUKHSANA CHAUDHRY is the mother of now deceased Mohammad Usman Chaudhry and is a resident of the County of Los Angeles, State of California.   Plaintiff RUKHSANA CHAUDHRY is decedent MOHAMMAD USMAN CHAUDHRY'S beneficiary and successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in any action or proceeding on decedent's behalf. RUKHSANA CHAUDHRY sues as an individual in her own right and, pursuant to her Declaration, which was attached Complaint as Exhibit C, as successor in interest, heir and legal representative of decedent to seek redress for the deprivation of decedent's rights, including but not limited to decedent's rights under the California

4

Constitution and state law.   Plaintiff RUKHSANA CHAUDHRY is informed and believes that no other person has a superior right to commence an action or proceeding on decedent's behalf.  A copy of decedent's death certificate is attached hereto as Exhibit A. At all times material to this complaint, plaintiff was a private citizen of the State of California, United States of America.

5.   Plaintiff "ESTATE" is the estate of now deceased MOHAMMAD USMAN CHAUDHRY. At the time of his death, Mohammad Usman Chaudhry (hereinafter "USMAN") was a 21 year-old man of Pakistani descent and Muslim religious affiliation diagnosed with developmental and mental disabilities, one of which was autism.

6.   Plaintiff USMA CHAUDHRY is the sister of now deceased USMAN and is a resident of the County of Los Angeles, State of California.  At all times material to this complaint, plaintiff was a private citizen of the State of California, United States of America.

7.   Plaintiff MOHAMMAD UMAR CHAUDHRY is the brother of now deceased USMAN and is a resident of the County of Los Angeles, State of California.  At all times material to this complaint, plaintiff was a private citizen of the State of California, United States of America.

8.   Plaintiff INTERFAITH COMMUNITIES UNITED FOR JUSTICE AND PEACE (hereafter "ICUJP") was founded in Los Angeles to support the work of Faith leaders from Buddhist, Christian, Islamic, Jewish and other spiritual faiths and traditions. As an organization composed of leaders and members of multiple faiths, ICUJP's constituency faces particular harm from City and County of Los Angeles' failures to notify family members of deaths in a diligent and timely manner. Such failures prevent the observance of burial requirements of multiple faiths represented in and comprising ICUJP.

5

9.   Plaintiff ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA (hereafter "SHURA") is an umbrella organization of Mosques & Muslim organizations serving the Muslims of Southern California. SHURA'S membership covers all four counties of Southern California in Los Angeles, Orange, Riverside & San Bernardino. As an organization composed of leaders and members of the Islamic faith, SHURA'S constituency faces particular harm from City and County of Los Angeles' failures to notify family members of deaths in a diligent and timely manner. Such failures prevent the observance of Islamic burial requirements.

10.  Plaintiff CANGRESS (also known as "Los Angeles Community Action Network") (hereafter "LA CAN") is a community action organization engaged in advocacy addressing homelessness issues throughout Los Angeles. LA CAN is principally focused on building indigenous leadership within the Central City East community of Los Angeles to address the multitude of problems faced by homeless and very low-income residents of the community. LA CAN works to increase access to quality, affordable, comprehensive health care in a community that is substantially affected by infectious disease, chronic health problems, mental health conditions, and other health conditions, an issue that is worsened by the recent County budget cuts in health care. As an organization focused on serving homeless persons and substantial numbers of persons with mental disabilities, LA CAN'S constituency faces particular harm from City of Los Angeles' failures to accommodate persons with mental disabilities and continuing uses of excessive force upon, and discriminatory enforcement of laws against, homeless persons.

## DEFENDANTS

6

11. Plaintiffs are informed, believe and thereupon allege that Defendant ANTHONY T. HERNANDEZ, sued in his official and individual capacities, was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of his employment and office as the Director of the Los Angeles County Coroner Department.

12. Plaintiffs are informed, believe and thereupon allege that Defendant LAKSHMANAN SATHYAVAGISWARAN, sued in his official and individual capacities, was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of his employment and office as the Chief Medical Examiner Coroner of the Los Angeles County Coroner Department.

13. Plaintiffs are informed, believe and thereupon allege that Defendant WILLIAM BRATTON, sued in his official and individual capacities, was at all times material herein a policy maker and/or supervisor and acting under color of law within the course and scope of his employment and office as the Chief of the Los Angeles Police Department (City of Los Angeles).

14. Plaintiffs are informed, believe and thereupon allege that Defendant JOSEPH CRUZ, sued in his official and individual capacities, was at all times material herein acting under color of law within the course and scope of his employment and office as a law enforcement officer of the Los Angeles Police Department (City of Los Angeles).

15. Plaintiffs are informed, believe and thereupon allege that Defendant DAVID ROMO, sued in his official and individual capacities, was at all times material herein acting under color of law within the course and scope of his employment and office as a law enforcement officer of the Los Angeles Police Department (City of Los Angeles).

16. Plaintiffs are informed, believe and thereupon allege that Defendant COUNTY OF LOS ANGELES, (herein after "COUNTY"), is a duly

7

1  constituted governmental entity in the state of California, and is, or was the

2  employer of one, or all, other individually named defendants who are sued in

3  their individual and official capacities, as well as one, or all, of Does.

4  17.  Plaintiffs are informed, believe and thereupon allege that Defendant LOS

5  ANGELES COUNTY CORONER DEPARTMENT, (herein after

6  "CORONER'S DEPT"), is an agency of a duly constituted governmental

7  entity in the state of California, to wit, County of Los Angeles, and is, or

8  was the employer of one, or all, other individually named defendants who

9  are sued in their individual and official capacities, as well as one, or all, of

10  Does.

11  18.  Plaintiffs are informed, believe and thereupon allege that Defendant CITY

12  OF LOS ANGELES, (herein after "CITY"), is a duly constituted

13  governmental entity in the state of California, and is, or was the employer of

14  one, or all, other individually named defendants who are sued in their

15  individual and official capacities, as well as one, or all, of Does.

16  19.  Plaintiffs are informed, believe and thereupon allege that Defendant LOS

17  ANGELES POLICE DEPARTMENT, (herein after "LAPD"), is an agency

18  of a duly constituted governmental entity in the state of California, to wit,

19  City of Los Angeles, and is, or was the employer of one, or all, other

20  individually named defendants who are sued in their individual and official

21  capacities, as well as one, or all, of Does.

22  20.  The identities, capacities and/or or nature of involvement of defendant Does

23  are presently unknown to plaintiffs.  Plaintiffs therefore sue such persons

24  using Does as fictitiously-named defendants.  Plaintiffs are informed and

25  believe, and based upon that belief allege, that there is likely to be

26  evidentiary support to prove that each Doe was involved in some manner

27  and legally responsible for the misconduct alleged below.  Plaintiffs are

28  informed and believe one, or all, of Does, sued in their official and

8

individual capacities, are agents, servants or employees of Defendant COUNTY, CITY and/or other Does. Plaintiffs will seek leave of court to amend the complaint to name the Doe defendants upon learning their true identities and roles in the actions complained of herein.

21. Plaintiffs are informed and believe, and based upon that belief alleges that all Defendants employed by COUNTY AND/OR CITY were, at all times relevant and material to this complaint, acting within the course and scope of their employment duties for COUNTY AND/OR CITY, and under color of law. Plaintiff is informed, believes and thereupon alleges that each of the individual defendants' acts were known to, discovered by, approved and/or ratified by defendants COUNTY AND/OR CITY, by and through their policy makers, decision makers, and/or supervisors.

22. Plaintiffs are informed, believe and thereupon allege that all Defendants employed by Does were, at all times relevant and material to this complaint, acting within the course and scope of their employment duties for Does, and under color of law. Plaintiffs are informed, believe and thereupon allege that each of the individual defendants' acts were known to, discovered by, approved and/or ratified by defendant Does, by and through its/their policy makers, decision makers, and/or supervisors, including applicable other Doe defendants.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23. At the time of his death, Mohammad Usman Chaudhry (hereinafter "USMAN") was a 21 year-old man of Pakistani descent and Muslim religious affiliation diagnosed with developmental and mental disabilities, one of which was autism. USMAN'S autism compromised his ability to control involuntary repetitive physical movements, process multiple sets of commands and focus his attention, *inter alia*. For the majority of his life,

USMAN was eligible for and received state-funded developmental disability services from the Harbor Regional Center and, upon reaching the age of majority, classified as a "dependent adult," per California Welfare & Institutions Code 15610.23(a). As a function of his autism, USMAN sometimes wandered away from home and roamed and lived on the streets of Hollywood, California.

24. In September of 2004, USMAN first wandered away from home for an extended period of time. USMAN'S mother, plaintiff Rukhsana Chaudhry, filed missing person reports with local law enforcement agencies, identifying USMAN as a dependent adult and leaving the Chaudhry family's address and telephone number on file. Thereafter, she contacted law enforcement on many occasions. USMAN'S father, Mohammad Afzal Chaudhry, searched the streets of the Greater Metropolitan Los Angeles area. On one occasion, the Chaudhrys worked with the Los Angeles County Sheriff's Department to compose and print a missing person leaflet for distribution also identifying USMAN as a dependent adult (*specifically "Mohammad is mentally challenged and has the mental capacity of a 14 year-old"*). The report was assigned NCIC# M144336830 and FCN# 2320425300075 and distributed to all local law enforcement agencies. In the several months leading up to Thanksgiving of 2007, USMAN wandered away from home again. USMAN returned home over Thanksgiving of 2007, but then wandered away again shortly thereafter.

25. Plaintiffs are informed and believe and thereupon allege the following: On or about March 25, 2008, at approximately 4:00 a.m., in the front yard of the apartment building located at 1435 North Curson Avenue, in Los Angeles, California, USMAN was wrongfully seized, detained, falsely imprisoned/arrested, discriminated against based upon, *inter alia*, his race, ethnicity, religion and/or developmental and mental disability, subjected to

10

severe emotional distress, battered and shot and caused to die, all without lawful reason, cause, or excuse by DEFENDANTS Joseph Cruz, David Romo, and Does;

26. DEFENDANTS Romo, Cruz, and Does contacted USMAN as he was laying outdoors in the yard of the residence at 1435 North Curson Avenue, woke him, handcuffed him, checked his identification visually and by mobile terminal/dispatch, and shot USMAN multiple times -- killing him;

27. DEFENDANTS CITY, LAPD, BRATTON, Romo and Cruz, and Does, failed to provide reasonable accommodations and/or effective communication in their interaction with USMAN an individual with a developmental and mental disabilities, including but not limited to autism.

28. DEFENDANTS Romo and Cruz, and Does, failed to timely provide medical treatment and/or allow medical treatment to be provided to USMAN and obstructed investigation into USMAN'S shooting and death;

29. Further, all DEFENDANTS, and each of them, as well as other Doe CITY and COUNTY officers and employees, prevented the observance of appropriate religious and familial burial rights and responsibilities by USMAN'S family (inclusive of his father Mohammad Afzal Chaudhry, his mother Rukhsana Chaudhry, his brother Mohammad Umar Chaudhry and his sister Usma Chaudhry) with relation to him by not informing USMAN'S family that USMAN had been killed until approximately twenty-one days passed, even though: (a) USMAN had multiple forms of identifying documents on his person at the time of his death including state-issued identification from the California Department of Motor Vehicles, (b) USMAN had at least two prior contacts with LAPD officers wherein he was arrested, one of which resulted in CA DDS Regional Center personnel assisting with the disposition of the case, (c) USMAN was the subject of a dependent adult missing person report with NCIC and FCN numbers, and

11

1    (d) USMAN'S identification, checked through law enforcement records

2    systems by LAPD officers at the scene, very clearly bears his first name –

3    "Mohammad."

4    *30.*   The Chaudhry family practices Islam. Their religious beliefs as to death and

5    burial are consistent with those set forth herein as to Muslims.

6    *31.*   In the Islamic tradition, Mohammad was final the prophet of God and was

7    responsible for transmitting the Qur'an as revealed to him by the archangel

8    Gabriel. Islam is the predominant religion, and the Qur'an is followed, in

9    much of Africa, the Middle East, as well as in major parts of Asia. Large

10    communities are also found in China, Russia and the Balkans. Converts and

11    immigrant communities are found in almost every part of the world. Upon

12    information and belief, about 20% of Muslims live in Arab countries, 30%

13    in the Indian Subcontinent, and 15.6% in Indonesia alone, the largest

14    Muslim country in absolute numbers. With 1.3 billion to 1.8 billion

15    Muslims, Islam is the second-largest religion in the world and the fastest

16    growing religion in the world. The name "Mohammad," which means "one

17    who is praiseworthy," is often given to Muslim boys to demonstrate a tie to

18    the teachings of the Prophet Mohammad. The name "Mohammad" is

19    reasonably cognizable as indicative of Muslim faith, family and/or origin.

20

21    -------------------------

22

23    32.   Over the past twenty years, the LAPD has engaged, and continues to so

24    engage, in gratuitous, unlawful and prolific acts of violence towards persons

25    who are homeless and/or have developmental and/or mental disabilities.

26    33.   Plaintiffs set forth the allegations in paragraphs 34 through 52 upon

27    information and belief.

28

34.  In 1999, a dozen fatal shootings of mentally disabled persons were examined by the Los Angeles Times newspaper and determined to involve actions by LAPD officers which contributed to the outcome, based on records and interviews. They are as follows: Ernesto Aurelio, 29, killed Feb. 14, 1994, on the porch of his South Leland Avenue apartment in San Pedro; Lenko D. Gracin, 22, killed July 31, 1994, while on foot near the intersection of 7th Street and Harbor Boulevard in San Pedro; Arnaldo Carbajal, 34, killed May 9, 1995, in his home on West 46th Street in South Los Angeles; Robert J. Cooper, killed Sept. 28, 1995, in the driveway of a house on East 90th Street in South Los Angeles; Jeffrey Hobson, 35, killed March 29, 1996, while standing in the parking area of the Daniel Freeman Medical Center in Inglewood; Ronald S. Carroll, killed June 22, 1996, on his porch on Bessemer Street in Van Nuys; Jonathan Horst, 33, killed March 27, 1997, while in his car on a pier in San Pedro; Michael Cramer, 37, killed June 20, 1997, at a halfway house for the mentally ill on North Oxford Avenue in Hollywood; Darryl Hood, 40, killed Nov. 15, 1997, on the athletic field of the Jordan Downs housing projects in Watts; Joe Joshua, 76, killed Oct. 10, 1998, on the sidewalk at the corner of Manchester and Vermont avenues in South Los Angeles; Gus Henry Woods, 56, killed March 2, 1999, on the street in his Canoga Park neighborhood; Margaret Mitchell, 55, killed May 21, 1999, on the sidewalk near the corner of 4th Street and La Brea Avenue near Hancock Park.

35.  The last-mentioned victim, Margaret Mitchell, killed by LAPD in May of 1999, was a 106-pound woman who was homeless and had a mental disability, who officers claimed lunged at them with a screwdriver. The LAPD ruled the shooting "in-policy." In the face of a multitude of witness' reports to the contrary, the CITY settled the related lawsuit for nearly one million dollars.

13

36.    Shortly after the Mitchell killing, in June of 2001, the City of Los Angeles entered into a Consent Decree with the Department of Justice, to "promote police integrity and prevent conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." The Consent Decree required an evaluation of LAPD's policies, procedures and practices related to police encounters with persons who may have a mental illness. The LAPD contracted Lodestar Management/Research, Inc. to analyze, make findings and issue a report via its Consent Decree Mental Illness Project. The report was issued May 28, 2002.

37.    The LAPD was found to receive an average of almost 12,000 calls each year which were considered "mental disturbance" calls.

38.    LAPD's policies and practices regarding the mental disabled were found to, *inter alia:* lack specialized and formal training for personnel in handling persons with mental disabilities; lack the sophistication to accurately monitor police contacts with persons with a mental disability; lack verbal de-escalation techniques to assist operators with agitated, mentally disabled or gravely disabled callers; and lack a standardized system to identify incidents in which a persons with a mental illnesses are involved in categorical uses of force.

39.    One year after monitoring of the mental illness aspects of the Consent Decree ceased (August 2006), the first of two sample incidents occurred which illustrate of continuing failures on the part of LAPD in refraining from using excessive force upon mentally disabled persons.

40.    On June 3, 2007, Faith Hernandez, was swiftly and severely beaten bloody by 4 officers in front of dozens of witnesses. Hernandez, a 90-pound, mentally ill woman, was then arrested for resisting arrest and battery on an officer. The supposed conduct that required 4 officers to beat Ms. Hernandez

14

1   profusely was threatened them with an ink pen. Ms. Hernandez was and/or
2   appeared homeless.

3   41.   On July 24, 2008, James Foster, a Skid Row resident with mental fitness
4   issues, was standing on a corner when officers inexplicably rushed him and
5   demanded that he open his mouth. Seconds later, two officers slammed Mr.
6   Foster's face into a concrete wall and started punching him in the face and
7   ribs. When several more officers arrived he was thrown to the ground with a
8   pile of officers on top of him. He was charged with resisting arrest and drug
9   possession and had to be taken from the scene in an ambulance. Mr. Foster
10  was and/or appeared homeless.

11  42.   People who are homeless in Los Angeles migrate between shelters and /or
12  service providers in Hollywood, Skid Row and Venice, *inter alia.* Homeless
13  persons tend to be concentrated in the mentioned areas, as those areas have
14  the highest concentration of service providers. Throughout the City of Los
15  Angeles, persons who are homeless, regardless of concentration, are subject
16  to policies and practices of the LAPD.

17  43.   The LAPD routinely initiates police sweeps wherein persons are subject to
18  unlawful detentions and searches in some or all of the areas in which
19  concentrated numbers of homeless persons are found. Persons are targeted
20  by LAPD during these sweeps based upon their race (dark-skinned
21  appearance) and/or the perception by the LAPD that they are homeless.

22  44.   The LAPD routinely tells persons that they cannot stand on public sidewalks
23  and orders them to move on under threat of arrest for loitering in some or all
24  of the areas in which concentrated numbers of homeless persons are found.
25  Persons are targeted by LAPD for these threats based upon their race (dark-
26  skinned appearance) and/or the perception by the LAPD that they are
27  homeless.

28

15

45.    The LAPD routinely and selectively enforces "quality of life" violations (jaywalking, littering, *inter alia*) in some or all of the areas in which concentrated numbers of homeless persons are found. Persons are targeted by LAPD for this selective enforcement based upon their race (dark-skinned appearance) and/or the perception by the LAPD that they are homeless. By way of example: Montgomery Garnett is a black male who was and/or appeared homeless and living on the streets at the time of his filing a lawsuit on November 12, 2007 (Quarles, et al v. City of Los Angeles, et al. – CV06-08222 DPP (SSx)). He usually carries a very large ram's horn, approximately three feet in length, as he walks the streets with his possessions in tow, quoting Scripture, making him readily identifiable to the police in the area. He was taken into custody, cited and/or arrested six times in the year and half prior to the filing of his lawsuit. The first three incidents all involved jaywalking tickets. Mr. Garnett provided the required identification but refused to sign the citations and, as a result, was held in custody for approximately three days for each citation. He was released without any charges filed against him each time. On another occasion that he was stopped by the LAPD, he was asked if he was on parole or probation. When Garnett, who was neither on probation or parole, refused to answer and walked away, he was taken into custody and subjected to extensive questioning by the officer, who told Garnett he should not talk to drug dealers. On another occasion, Mr. Garnett was threatened by several LAPD officers with a citation for littering when he was eating potato chips from a bag. After a brief verbal exchange, in which Mr. Garnett quoted Deuteronomy to the officers, he was arrested and handcuffed for making terrorist threats.

----------------------------

46. In addition to persons who appear homeless or dark-skinned or both, LAPD and CITY routinely profile, discriminate and employ excessive force, unlawful seizures and unlawful searches against persons of Muslim religious affiliation based upon said affiliation or the appearance of said affiliation.

47. In or near November of 2007, the LAPD instituted a program popularly dubbed "Muslim Mapping." The program proposed to profile persons and their communities based upon religion, national origin and place of worship, *inter alia* – in order to find out "where the Pakistanis, Iranians and Chechens are...". Though the initial Muslim Mapping program was stopped, the LAPD still singles out Muslim individuals and communities for investigation, surveillance and data-gathering based upon their religious, ethnic and socio-historical attributes.

48. In addition to singling out Muslims for surveillance and investigation, the LAPD extends its discriminatory treatment of Muslims to the use of violence upon Muslims based upon their religious, ethnic and socio-historical attributes.

49. On July 19, 2007, LAPD officers came to a Muslim man's residence. The man, of South Asian, Arab and/or dark-skinned appearance, is a lawful permanent resident, had been living in the United States for 40 years, and had gone to Mecca (for religious pilgrimage) the year prior. The man and his wife are of South Asian, Arab and/or dark-skinned appearance. He was accused of dealing arms, his home was searched, and was then arrested and taken to and held at a police station. Multiple LAPD officers later raided his home. His wife was forced outside without her hijab (head covering). The LAPD booking officer at the station called him "Osama Bin Laden."

50. December 30, 2008, during a protest at the Israeli consulate, LAPD officers forced a male Muslim to get on the ground and an officer jumped on him --

17

despite his explaining to officers that his 4 year-old son was running away. He was then taken to an alley where his face was pushed into a wall and he was held against the wall. After being detained for 40 minutes, he and his family, all of South Asian, Arab and/or dark-skinned appearance, were told the leave the area or be arrested.

51.    January 6, 2009, a Muslim man of South Asian, Arab and/or dark-skinned appearance attended a protest against Israeli action in Gaza where he purchased a flag that was being widely distributed to and carried by people at the protest. The flag had a crescent moon and star on it. The crescent moon and star is an internationally recognized symbol of the faith of Islam. The symbol is featured on the flags of several Muslim countries. As the man left the protest, he was stopped by an LAPD officer who proceeded to yell at him and his wife and children, throw the flag on the ground and step on it. The man then asked to speak to the watch commander. Three squad cars full of LAPD officers then arrived on the scene. An LAPD supervisor told the man to calm down, two plainclothes officers then told the man to either go home or "suffer the consequences."

52.    January 11, 2009, a Muslim man attended a Palestinian issue-based rally and was directed by LAPD to park in an area near Israeli protestors. As the man walked toward the demonstrations, he, his brother, and his cousin, all of South Asian, Arab and/or dark-skinned appearance, were surrounded and beaten by a mob of Israeli protestors. When the man and his family members were able to escape the mob, LAPD stood by without helping them or inquiring about their battery. When asked for protection, an LAPD officer replied "good luck." When asked for directions, an LAPD officer replied "run." After arriving at the Palestinian side, LAPD officers in a vehicle told the man to point out the attackers but then rolled up their window and did nothing.

------------------------

53.   The Coroner's Dept. is responsible for the investigation and determination of the cause and manner of all sudden, violent, or unusual deaths in the County of Los Angeles.

54.   Plaintiffs set forth the allegations in paragraphs 55 through 68 upon information and belief.

55.   The Coroner's Dept. is the only Coroner's office for all of Los Angeles County. Coroner's Dept. is charged with serving all persons, regardless of religious affiliation, ethnicity or national origin, within an approximately 5,000 square mile area. Coroner's Dept. serves populations of about 90 cities, and works with more than 50 law enforcement agencies. Coroner's dept. handles about 19,000 cases a year accounting for approximately 1/3 of the deaths in Los Angeles County. Coroner's Dept. autopsies approximately 6,000 decedents yearly.

56.   Decedent processing includes obtaining the height and weight of bodies, the collection, documentation, and safekeeping of personal effects, and the collection of both physical and medical evidence, fingerprinting of decedents using LIVE-SCAN technology and placement of identification tags on the body. Coroner's Dept. participates in a state-mandated program (SB 90) to examine dental records of known missing persons to aid in the identification of John and Jane Does. Moreover, Coroner's Dept. investigators are Cal POST certified law enforcement officers and all law enforcement information systems and data are immediately available to them, including NCIC, DMV and other databases.

57.   Persons served by the Coroner's Dept. include persons subscribing to Muslim, Jewish, Christian and/or other belief systems and/or religions.

19

58.  When a Muslim person is near death, those around him or her are called upon to give comfort, and reminders of God's mercy and forgiveness. They may recite verses from the Qur'an, give physical comfort, and encourage the dying person to recite words of remembrance and prayer. It is recommended, if at all possible, for a Muslim person's last words to be the declaration of faith: "I bear witness that there is no god but Allah."

59.  Just after death has been determined, family members or those persons who are present should close the eyes of the deceased, lower his jaw to his head so that it does not sag, cover his body completely with a clean sheet, ask God to forgive him, and hastily begin preparing for shrouding and burial. Muslims strive to bury the deceased as soon as possible after death, but no later than three days. In preparation for burial, the family or other members of the community will wash and shroud the body in sheets of clean, white cloth (called the kafan). Bodies are then buried according to further dictates. Embalming and/or cremation are strictly prohibited.

60.  When a Jewish person is near death (within three days), it is the belief of some Jewish people that the person who is near death is considered a "goses" -- one who is not to be disturbed. While the person should not be disturbed, this does not mean leaving the person abandoned. Family should be present. If at all possible, the person must say the "Shema" – Jewish prayer about the unity of All Being. While no English translation effectively conveys the meaning of the phrase "שְׁמַע יִשְׂרָאֵל, יְיָ אֱלֹהֵינוּ, יְיָ אֶחָד" its closest conveyed idea is "Listen! God is One."

61.  Some individuals practicing Judaism believe that after a person dies, the eyes are closed, the body is laid on the floor and covered, and candles are sometimes lit next to the body. The body is never left alone until after burial, as a sign of respect. The people who sit with the dead body are called shomerim. In preparation for burial, the body is thoroughly cleaned and

20

wrapped in a simple, plain linen shroud. Embalming is prohibited, as are autopsies. After shrouding, the body must be buried in the Earth within 24 hours. Cremation is not permitted.

62. Many Muslim and Jewish persons share beliefs that treating the body of the departed with respect and dignity is a fundamental obligation of the living. They believe the body is considered to be (or have been, as the case may be) the sacred dwelling of the soul – the desecration of which is strictly prohibited.

63. When a Christian person is near death and/or dies, a myriad of practices may be engaged in based upon denominational preference. Common elements may include last prayers, comfort from family members, and upon death, preparation of the body for burial. Like Muslim and Jewish persons, some Christian persons believe that cremation is strictly prohibited. Further, all persons are generally interested in burial of the body without delay.

64. When bodies are received by the Coroner's Dept., the bodies are routinely in the absence of identifying personal documents or effects. When cases involve the LAPD, LAPD routinely retains the identifying documents and/or personal effects for investigative purposes unrelated to the Coroner's Dept.

65. The Coroner's Dept. routinely fails to timely notify next of kin for bodies it receives.

66. In a representative example, on February 9, 2008, Antwan Cole, a black man, was shot and killed. On his person, he had a cell phone with emergency numbers in it, his school badge and his security guard badge. Coroner's Dept. did not receive Cole's cell phone with his body. He was listed as an "unknown black male" by the Coroner's Dept. Cole lived with his grandmother. The Coroner's Dept. never notified her of his death. She later found out from a neighbor that Mr. Cole had died and she then contacted the Coroner's Dept. herself.

21

67. In another representative example, on July 7, 2005, Julio Olvera, a Latino man, died from head injuries after a brief stay at County USC hospital. Coroner's Dept. did not notify his next of kin until August 11, 2005, after the body had seriously decayed from non-refrigerated storage during the passage of time.

68. Several unidentified Doe County and City officials and unknown County and City personnel, supervisors, officials and policy makers approved of, enabled, failed to prevent and ratified all the conduct complained of herein.

## SCOPE AND NATURE OF ALLEGATIONS

69. Plaintiffs are informed, believe and thereupon allege that officials, supervisors, policy makers and other individuals with the authority to set or modify municipal and/or departmental policy, *dejure* or *defacto*, of Defendant COUNTY, CITY and/or DOES, participated in, approved of, ratified and/or failed to prevent the acts by Defendants ROMO, CRUZ AND DOES, complained of by Plaintiffs.

70. USMAN, was at all relevant times as alleged herein, was a qualified individual with a disability and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

71. At all times relevant to this action, DEFENDANTS CITY and LAPD, were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public

72. At all relevant times as alleged herein, Defendants CITY, LAPD, BRATTON, ROMO, CRUZ, and DOES, knew or should have known that USMAN was a qualified individual with a disability.

73. Plaintiffs are informed, believe and thereupon allege that that Defendant CITY and/or DOES, failed to communicate effectively with USMAN who was at all relevant times an individual with a mental and developmental

22

disabilities, including but not limited to autism. Plaintiffs are informed, believe and thereupon further allege that Defendants CITY and/or DOES failed to provide a reasonable accommodation to USMAN who as at all relevant times an individual with mental and development disabilities, including but not limited to autism and as result was unjustly exposed to excessive force and ultimately unlawfully killed by Defendants ROMO AND CRUZ.

74.     Plaintiffs are informed, believe and thereupon allege that at all times herein mentioned, each of the DEFENDANTS; including officials, supervisors, watch commanders and other policy makers from Defendants COUNTY, CITY and/or DOES, and their agencies; was the agent, employee or co-conspirator of one other, some, or all of their Co-defendants. Plaintiffs are informed, believe and thereupon allege that each of the DEFENDANTS, acting individually, and/or in concert with each other, engaged in a common plan to wrongfully deprive Plaintiffs of their respective rights to: life, accommodation for mental and developmental disability, freedom from discrimination based upon disability, security in person and effects, freedom from unreasonable searches and seizures, equal protection, free exercise of religion and due process of law. Each and all of the things done by each DEFENDANT against USMAN and/or each Plaintiff, as mentioned in this entire Complaint, were done because of religion, ethnicity and/or mental disability. And, in doing each and all of the things herein mentioned, or neglecting or intentionally failing to rectify said misconduct, each and all DEFENDANTS were acting pursuant to a *defacto* policy and within the scope of such agency, employment and conspiracy and with full permission, knowledge, approval, ratification and support of each other.

## DAMAGES

23

75.   The aforementioned acts of ALL DEFENDANTS, and each of them, directly and proximately, caused Plaintiffs to suffer as follows: (A) RUKHSANA CHAUDHRY – familial deprivation, loss of society and comfort, pain and suffering, loss of the right to timely prepare and bury her son per religious dictates, humiliation, damage to name and reputation in the community, burial expenses and other expenses associated with burial; (B) MOHAMMAD AFZAL CHAUDHRY – familial deprivation, loss of society and comfort, pain and suffering, loss of the right to timely prepare and bury his son per religious dictates, humiliation, damage to name and reputation in the community, burial expenses and other expenses associated with burial; (C) USMA CHAUDHRY – familial deprivation, loss of society and comfort, pain and suffering, loss of the right to timely prepare and bury her brother per religious dictates, humiliation, damage to name and reputation in the community; (D) MOHAMMAD UMAR CHAUDHRY – familial deprivation, loss of society and comfort, pain and suffering, loss of the right to timely prepare and bury his brother per religious dictates, humiliation, damage to name and reputation in the community; (E) ESTATE OF MOHAMMAD USMAN CHAUDHRY – loss of life, loss of enjoyment of accommodation for mental and developmental disabilities, freedom from discrimination based upon disability, loss of personal liberty and freedom to physically move about, loss of enjoyment of personal liberty and freedom to physically move about, humiliation, emotional and physical injury and pain and suffering, great and extreme mental anguish, damage to name and reputation in the community, loss of the right to timely preparation and burial per religious dictates.

## **DECLARATORY AND INJUNCTIVE RELIEF**

76.   The acts, omissions and injury complained of herein are capable of repetition

24

but evading review and thus injunctive and declaratory relief are appropriate and necessary.

77.     Members and constituents of Plaintiff ICUJP (Leaders of congregations of Buddhist, Christian, Islamic, Jewish and other spiritual faiths and traditions) are threatened with great and irreparable injury in that defendants' policies and practices regarding notifying next of kin of the deaths of family members without adherence to, or observance of, religious dictates and rights regarding burial results in severe and irreparable injuries to its members and constituents and denies them of the equal protection of the laws.

78.     Members, and constituents (equivalents of parishioners), of Plaintiff SHURA are threatened with great and irreparable injury in that defendants' policies and practices regarding notifying next of kin of the deaths of family members without adherence to, or observance of, religious dictates and rights regarding burial results in severe and irreparable injuries to its members and constituents (Muslims) and denies them of the equal protection of the laws.

79.     Members and constituents of Plaintiff LA CAN are threatened with great and irreparable injury in that defendants' policies and practices of failing to accommodate persons with mental and/or developmental disabilities and continuing uses of excessive force upon, and discriminatory enforcement of laws against, homeless persons results in severe and irreparable injuries to its members and constituents and denies them of the equal protection of the laws.

80.     Plaintiffs ICUJP, SHURA and LA CAN, and thus their respective members and constituents, have no adequate remedy at law.

## CLAIMS FOR RELIEF

25

**FIRST CLAIM FOR RELIEF**

**BY PLAINTIFF ESTATE**

**AGAINST DEFENDANTS CITY AND LAPD**

**Violation of Title II of the Americans with Disabilities Act**

**and the regulations promulgated thereunder**

**(42 U.S.C. § 12101 et seq.)**

81. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

82. Congress enacted the Americans with Disabilities Act ("ADA") upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

83. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national m.   ate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

84. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

85. The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.160, require public entities, among other things, to:

    a. Take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others;

    b. Furnish appropriate auxiliary aids and services (including qualified sign language interpreters) where necessary to afford an individual with a

26

disability an equal opportunity to enjoy the benefits of a service, program, or activity conducted by the public entity; and

c. In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with a disability.

86. At all times relevant to this action, DEFENDANTS CITY and LAPD, were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

87. At all times relevant to this action, USMAN was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

88. Through the acts and omissions of DEFENDANTS CITY, LAPD, BRATTON and their agents and employees described herein, Defendants subjected USMAN to discrimination on the basis of his disability in violation of Title II of the ADA  and the regulations promulgated thereunder by failing to provide communication that is as effective as communication provided to the general public in the following situations:

a. Investigating the potential crime scene;

b. Arrest;

c. Interrogation; and

d. While otherwise in Defendants' custody or interacting with Defendants.

89. Plaintiffs are informed, believe, and thereon allege that Defendants and their agents and employees could have reasonably provided USMAN; recognition and/or acknowledgement of his disability and handling consistent therewith, non-confrontational interaction, and /or on-scene services directed/delivered by the LAPD Mental Evaluation Unit and or System-wide Mental Assessment Response Team.

27

90.   Plaintiffs are informed, believe, and based thereon allege that Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of each Plaintiff's rights.

91.   As a direct and proximate result of the aforementioned acts, As a result of the acts and misconduct of the Defendants complained of herein, USMAN died and Plaintiffs have suffered, are now suffering and will continue to suffer damages and injuries as alleged in this Complaint.

92.   Plaintiffs are informed, believe, and thereon allege that Defendants and their agents and employees have failed and continue to fail to:

   a. Adopt and enforce policies and procedures for communicating effectively with individuals who have mental and/or developmental disabilities;

   b. Train LAPD officers and employees to communicate effectively with individuals who have mental and/or developmental disabilities; and

   c. Train LAPD officers and employees regarding the indicators and behavioral displays/factors of individuals who have mental and/or developmental disabilities.

93.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

94.   Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to damages, injunctive relief, and to recover reasonable attorneys' fees and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF
### BY PLAINTIFF ESTATE
### AGAINST DEFENDANTS CITY, LAPD AND DOES
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. § 794)

28

95.   Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

96.   Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ." 29 U.S.C. § 794.

97.   USMAN was at all relevant times a qualified individual with a disability within the meaning of the Rehabilitation Act because he has a developmental and mental impairment that substantially limits one or more of his major life activities. 29 U.S.C. § 705(20)(B).

98.   At all times relevant to this action Defendants were recipients of federal funding within the meaning of the Rehabilitation Act.

99.   Through their acts and omissions described herein, Defendants have violated the Rehabilitation Act by excluding USMAN, because of his disabilities, from participation in, denying them the benefits of, and subjecting USMAN to discrimination in the benefits and services Defendants provide to the general public.

100.   Plaintiffs are informed, believe, and based thereon allege that Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of USMAN.

101.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continue to suffer humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

102.   Plaintiffs are informed, believe, and based thereon allege that Defendants discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

103.   Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to injunctive relief and to recover reasonable attorneys' fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF

### Violation of 4th Amendment (Unlawful Seizure / Excessive Force)

### BY PLAINTIFF ESTATE AGAINST ALL CITY DEFENDANTS AND DOES

104.   Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

105.   This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured to USMAN by the Fourth, and Fourteenth Amendments to the United States Constitution.

106.   The seizure of, use of excessive force upon, AND search of USMAN, AND seizure of USMAN'S personal effects were without probable cause, or warrant, or any recognized exceptions thereto, and were thus unreasonable, and in violation of USMAN'S Fourth Amendment right to be free of unreasonable search and seizure.

## FOURTH CLAIM FOR RELIEF

### Violation of 14th Amendment

### (Substantive Due Process)

### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

### (Deprivation of Familial Association)

### BY PLAINTIFFS RUKHSANA CHAUDHRY AND MOHAMMAD AFZAL CHAUDHRY AGAINST ALL CITY DEFENDANTS AND DOES

107.   Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

108. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to Plaintiffs by the Fourteenth Amendment to the United States Constitution.

109. The conduct of each defendant violated the rights of plaintiffs to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and entitles plaintiffs to recover damages including punitive damages, as alleged above, pursuant to 42 U.S.C. § 1983.

110. DEFENDANTS CITY, LAPD, BRATTON, ROMO, CRUZ AND DOES' chosen course of action to not at all notify USMAN'S family of his death, the result of an LAPD shooting, was unreasonable, callous, evil and despicable. Said defendants' actions were violations of those provisions of state law alleged in herein, and constituted interference in plaintiffs' familial relationships and religious beliefs, specifically pertaining to burial, and were thus violations of Plaintiffs' Fourteenth Amendment Right to Due Process of Law.

111. DEFENDANTS COUNTY, CORONER'S DEPT, HERNANDEZ, SATHYAVAGISWARAN AND DOES' chosen course of action to not notify USMAN'S family of his death for twenty-one days, when his identity was ascertained by DMV records, was unreasonable, disgraceful and reprehensible. Said defendants' actions were violations of those provisions of state law alleged in herein, and constituted interference in plaintiffs' familial relationships and religious beliefs, specifically pertaining to burial, and were thus violations of Plaintiffs' Fourteenth Amendment Right to Due Process of Law.

112. DEFENDANTS CITY, LAPD, BRATTON, ROMO, CRUZ AND DOES' taking of USMAN'S life has wrongfully deprived plaintiffs Rukhsana

31

1    Chaudhry and Mohammad Afzal Chaudhry of familial association with their

2    son, USMAN.

3

4                  **FIFTH CLAIM FOR RELIEF**

5       **Violation of Civil Rights 42 U.S.C. §§ 1983, 1985, 1986**

6             **Conspiracy to Violate Civil Rights**

7       **ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

8    113.  Plaintiffs incorporate all paragraphs of this complaint, as though fully set

9          forth herein.

10   114.  This cause of action arises under United States Code, Title 42, Sections 1983,

11         1985 and 1986, wherein Plaintiffs seek to redress a deprivation under color of

12         law of a right, privilege or immunity secured to them, respectively, by the

13         First, Fourth and Fourteenth Amendments to the United States Constitution.

14   115.  DEFENDANTS, and each of them, acted as described herein above, in

15         conspiracy with, and with the agreement, permission, ratification, and

16         approval of, each other to violate Plaintiffs' civil rights, under the U.S.

17         Constitution as stated herein this Complaint.

18

19                  **SIXTH  CLAIM FOR RELIEF**

20         **Violation of Civil Rights 42 U.S.C. § 1983**

21     **Unconstitutional Policy Custom or Procedure – (*Monell*)**

22  **ALL PLAINTIFFS AGAINST DEFENDANTS CITY, LAPD, COUNTY AND**

23             **CORONER'S DEPT AND DOES**

24   116.  Plaintiffs incorporate all paragraphs of this complaint, as though fully set

25         forth herein.

26   117.  This cause of action arises under United States Code, Title 42, Section 1983,

27         wherein Plaintiffs seek to redress a deprivation under color of law of a right,

28

1    privilege or immunity secured to them, respectively, by the First, Fourth and

2    Fourteenth Amendments to the United States Constitution.

3    118.   Defendants violated Plaintiffs' constitutional rights, as alleged herein above,

4    by creating and maintaining, among other things, the following

5    unconstitutional customs and practices, *inter alia*:

6    119.   Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy,

7    custom or practice of harassing, intimidating and threatening to arrest and

8    arresting, without legal justification, persons who are, or appear to be,

9    homeless and/or sleeping outdoors;

10   120.   Plaintiffs allege that Defendants CITY and/or LAPD have a *de facto* policy,

11   custom or practice of harassing, intimidating, threatening to arrest and

12   arresting, without legal justification, persons who are, or appear to be,

13   mentally disabled;

14   121.   Plaintiffs allege that Defendants CITY and/or LAPD have a *de facto* policy,

15   custom or practice of harassing, intimidating and threatening to arrest and

16   arresting, without legal justification, persons who are, or appear to be, of

17   Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or

18   who are likely of Muslim faith;

19   122.   Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy,

20   custom or practice of using excessive force upon persons who are, or appear

21   to be, homeless and/or sleeping outdoors;

22   123.   Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy,

23   custom or practice of using excessive force upon persons who are, or appear

24   to be, mentally disabled;

25   124.   Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy,

26   custom and/or practice of using excessive force against people, including but

27   not limited to persons who are, or appear to be, of Middle Eastern or South

28   Asian ancestry and/or dark-skinned appearance;

33

125. Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy, custom or practice of failing to investigate police department uses of force upon persons who are, or appear to be, of Middle Eastern or South Asian ancestry and/or dark-skinned appearance;

126. Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy, custom or practice of not notifying families of the death of persons killed by LAPD;

127. Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy, custom or practice of not notifying families of the death of persons killed by LAPD who are, or appear to be, of Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or who are likely of Muslim faith;

128. Plaintiffs allege that Defendants COUNTY and/or CORONER'S DEPT have a de facto policy, custom or practice of failing to timely process cases of persons who are, or appear to be, of Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or who are likely of Muslim faith;

129. Plaintiffs allege that Defendants COUNTY and/or CORONER'S DEPT have a de facto policy, custom or practice of failing to timely notify families of the death of persons who are, or appear to be, of Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or who are likely of Muslim faith;

130. Plaintiffs allege that Defendants CITY and/or LAPD have a de facto policy, custom or practice of not making available adequate police officers and field personnel trained to safely service, accommodate, and/or care for persons who are, or appear to be, mentally disabled.

131. Defendants CITY'S, LAPD'S, COUNTY'S AND/OR CORONER'S DEPT'S policies and/or customs caused and were the moving force or affirmative link behind some or all of the violations of Plaintiffs' constitutional rights at issue in this case.

132. Plaintiffs are informed, believe and thereupon allege that Defendants CITY'S, LAPD'S, COUNTY'S AND/OR CORONER'S DEPT'S policies and/or customs prevent and/or hinder the appropriate observance of, and compliance with, the burial customs and mandates of multiple religions, including but limited to Christianity, Islam and/or Judaism.

133. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD, BRATTON, COUNTY, CORONER'S DEPT, HERNANDEZ and SATHYAVAGISWARAN, maintain a custom, policy and/or practice of not properly supervising and/or disciplining their respective employees, officers, managers and supervisors for failing to observe and act in compliance with the legal requirements and protections applicable to persons as set forth in the U.S. and California Constitutions, and other laws as set forth in this complaint, including but not limited to Cal. Health & Safety Code §7104; Cal Govt. Code §27471; the ADA; Cal Civ. Code §§ 51, 51.7, 52; 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the U.S. Constitution.

134. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiffs, and each of them.

135. It is alleged that some or all of Plaintiffs' injuries are of a permanent nature.

136. Plaintiff specifically alleges that Defendants COUNTY'S, CITY'S, LAPD'S AND/OR CORONER'S DEPT'S policy, custom and/or practices, as described herein, were within the control of Defendants COUNTY, CITY, LAPD AND/OR CORONER'S DEPT and within the feasibility of Defendants COUNTY, CITY, LAPD AND/OR CORONER'S DEPT, to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Failure to Train – (*City of Canton*)

35

**BY ALL PLAINTIFFS AGAINST DEFENDANTS CITY, COUNTY,**

**LAPD, CORONER'S DEPT AND DOES;**

**42 U.S.C. § 1983 – Individual Supervisory Liability**

**BY ALL PLAINTIFFS AGAINST DEFENDANTS BRATTON,**

**HERNANDEZ, SATHYAVAGISWARAN**

137. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

138. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to them, respectively, by the First, Fourth and Fourteenth Amendments to the United States Constitution.

139. Defendants violated Plaintiffs' constitutional rights, as alleged herein above, by, among other things, failing to train as follows, inter alia:

140. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD and BRATTON have ample reason to know, based upon arrest reports, claims for damages, inter alia, that LAPD'S officers and/or employees regularly engage in the misdeeds set forth throughout this complaint;

141. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD and BRATTON had ample reason to know, based upon arrest reports, claims for damages, publicly available statistics, departmental reports, inter alia, that LAPD'S officers and/or employees regularly encounter, and are not prepared to safely and effectively provide services to and accommodate, persons suffering mental disabilities such as those suffered by USMAN;

142. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD and BRATTON had ample reason to know, based upon arrest reports, claims for damages, publicly available statistics, departmental reports, inter alia, that LAPD'S officers and/or employees regularly encounter, and are not

36

prepared to provide services to and accommodate, persons practicing religious beliefs such as those of USMAN and his family;

143. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD, COUNTY AND/OR CORONER'S DEPT had ample reason to know, based upon publicly available documents and statistics, departmental reports, inter alia, that said Defendants and their officers and/or employees regularly encounter, and are not prepared to provide services to and accommodate, persons who must observe and comply with the burial customs and mandates of multiple religions, including but limited to Christianity, Islam and/or Judaism.

144. Plaintiffs are informed, believe and thereupon allege that Defendants COUNTY, CORONER'S DEPT, HERNANDEZ and SATHYAVAGISWARAN had ample reason to know, based upon complaints, claims for damages, inter alia, that CORONER'S DEPT'S officers and/or employees regularly encounter, and are not prepared to provide services to and accommodate, persons practicing religious beliefs such as those of USMAN and his family;

145. Plaintiffs are informed, believe and thereupon allege that Defendants COUNTY, CORONER'S DEPT, HERNANDEZ and SATHYAVAGISWARAN had ample reason to know, based upon complaints, claims for damages, inter alia, that CORONER'S DEPT'S officers and/or employees regularly engaged in the misdeeds set forth throughout this complaint;

146. Plaintiffs are informed, believe and thereupon allege that Defendants CITY, LAPD, BRATTON, COUNTY, CORONER'S DEPT, HERNANDEZ and SATHYAVAGISWARAN, have failed to properly train their respective employees, officers, managers and supervisors as to the legal requirements and protections applicable to persons as set forth in the U.S. and California

37

Constitutions, and other laws as set forth in this complaint, including but not limited to Cal. Health & Safety Code §7104; Cal Govt. Code §27471; the ADA; Cal Civ. Code §§ 51, 51.7, 52; 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the U.S. Constitution.

147.  Plaintiffs allege that these failures are the result of deliberate indifference on the part of Defendants CITY, LAPD, BRATTON, COUNTY, CORONER'S DEPT, HERNANDEZ and SATHYAVAGISWARAN, by and through their decision makers and subordinates.

148.  The foregoing unconstitutional failures to train were a direct and legal cause of harm to Plaintiffs.

149.  It is alleged that some or all of Plaintiffs' injuries are of a permanent nature.

150.  DEFENDANTS BRATTON, HERNANDEZ and SATHYAVAGISWARAN acted in supervisory capacities with respect to the incidents involving Plaintiffs. As supervisors, Defendants BRATTON, HERNANDEZ and SATHYAVAGISWARAN acted intentionally, maliciously, in conscious disregard, and with deliberate indifference to the rights of Plaintiffs. These supervisory failures directly caused and contributed to Plaintiffs' damages.

151.  Plaintiffs specifically allege that Defendants COUNTY'S, CITY'S, LAPD'S AND/OR CORONER'S DEPT'S failures to train, as described herein, were within the control of Defendants COUNTY, CITY, LAPD AND/OR CORONER'S DEPT and within the feasibility of Defendants COUNTY, CITY, LAPD AND/OR CORONER'S DEPT, to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

38

1
2
### EIGHTH CLAIM FOR RELIEF

3
#### Violation of 1st Amendment (Free Exercise Clause)

4
#### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

5   152. Plaintiffs incorporate all paragraphs of this complaint, as though fully set
6        forth herein.

7   153. This cause of action arises under United States Code, Title 42, Section 1983,
8        wherein Plaintiffs seek to redress a deprivation under color of law of a right,
9        privilege or immunity secured to them, respectively, by the First, Fourth and
10       Fourteenth Amendments to the United States Constitution.

11  154. DEFENDANTS, and each of them, acted as described herein above, to
12       violate Plaintiffs' civil rights, under the U.S. Constitution as stated herein
13       this Complaint. In so doing, Defendants, and each of them, burdened each
14       Plaintiff's practice of religion, by preventing each Plaintiff from engaging in
15       conduct mandated by each Plaintiff's faith.

16
17
### NINTH CLAIM FOR RELIEF

18
#### Violation of 14th Amendment (Equal Protection)

19
#### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

20  155. Plaintiffs incorporate all paragraphs of this complaint, as though fully set
21       forth herein.

22  156. This cause of action arises under United States Code, Title 42, Section 1983,
23       wherein Plaintiffs seek to redress a deprivation under color of law of a right,
24       privilege or immunity secured to them, respectively, by the First, Fourth and
25       Fourteenth Amendments to the United States Constitution.

26  157. DEFENDANTS' actions as described in this Complaint were done to
27       Plaintiffs in violation of protections afforded Plaintiffs by the 14th
28

Amendment to the United States Constitution. Therefore, Plaintiffs are entitled to bring suit and recover damages pursuant to 42 U.S.C. § 1983.

## TENTH CLAIM FOR RELIEF
### BY PLAINTIFFS RUKHSANA CHAUDHRY, MOHAMMAD AFZAL CHAUDHRY, USMA CHAUDHRY AND MOHAMMAD UMAR CHAUDHRY
### AGAINST ALL DEFENDANTS
### SUPPLEMENTAL STATE LAW CLAIM FOR NEGLIGENCE

158. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

159. This cause of action arises under the general laws and Constitution of the State of California. Plaintiffs have complied with the California Tort Claims Act requirements.

160. For purposes of this cause of action only, allegations are deemed to sound in negligence, and set forth pursuant to Cal Civ Code § 1714.

161. At all times material herein, DEFENDANTS BRATTON, AND DOES, and each of them, had a duty to act reasonably to avoid, or foresee, the risk that said DEFENDANTS themselves, or their colleagues or subordinates, would commit the acts complained of herein, including but not limited to: (a) encountering and physically harming a person such as USMAN, suffering from mental disabilities such as USMAN suffered; (b) encountering and violating the religious and familial rights of a person such as USMAN and/or his family; and (c) choosing to not notify the family of a person such as USMAN after killing him.

162. COUNTY, CORONER'S DEPT, HERNANDEZ, SATHYAVAGISWARAN, AND DOES, and each of them, had a duty to act reasonably to avoid, or foresee, the risk that said DEFENDANTS

40

themselves, or their colleagues or subordinates, would commit the acts complained of herein.

163. DEFENDANTS CITY, CRUZ, ROMO, BRATTON, COUNTY, CORONER'S DEPT, HERNANDEZ, SATHYAVAGISWARAN, AND DOES, and each of them, breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by impeding, arresting or otherwise curtailing the civil rights of, or endangering, without lawful basis, USMAN and/or Plaintiffs, respectively.

164. DEFENDANTS CITY, COUNTY, CORONER'S DEPT, BRATTON, HERNANDEZ, SATHYAVAGISWARAN, AND DOES, and each of them, breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by failing to discharge their respective duties to appropriately screen and train their employees and investigate and discipline their employees for misconduct.

165. All said DEFENDANTS, and each of them, ratified the aforesaid conduct committed under color of law.

166. Each DEFENDANT'S aforesaid breaches of duty were proximate and actual causes of injury to PLAINTIFFS.

167. Entity and/or agency DEFENDANTS are liable to PLAINTIFFS for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## ELEVENTH CLAIM FOR RELIEF
### BY PLAINTIFFS RUKHSANA CHAUDHRY, MOHAMMAD AFZAL CHAUDHRY, USMA CHAUDHRY AND MOHAMMAD UMAR CHAUDHRY AGAINST ALL DEFENDANTS

41

## SUPPLEMENTAL STATE LAW CLAIM

### FOR  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

168.  Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

169.  This cause of action arises under the general laws and Constitution of the State of California.

170.  Plaintiffs have complied with the California Tort Claims Act requirements.

171.  In committing the acts and omissions specified throughout this complaint, DEFENDANTS, and each of them, acted intentionally, recklessly, and/or in conscious disregard with respect to the high probability that their conduct would likely result in severe emotional distress, embarrassment, humiliation, extreme fear, anxiety, panic attacks, shock, dismay and anguish to Plaintiffs, with or without accompanying physical symptoms.

172.  Each Defendant's acts and omissions as specified in Paragraphs 1 through 123, were outrageous and shocking to the conscience of an ordinary person, and caused in Plaintiffs, and each of them, severe emotional distress, embarrassment, humiliation, extreme fear, anxiety, panic attacks, shock, loss of sleep, dismay and anguish and was a substantial factor in causing damage and injury to each Plaintiff as set forth herein.

173.  Entity and/or agency DEFENDANTS are liable to PLAINTIFFS for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

### TWELFTH CLAIM FOR RELIEF

### BY ALL PLAINTIFFS  AGAINST DEFENDANTS COUNTY CORONER'S DEPT, HERNANDEZ, SATHYAVAGISWARAN AND DOES

### SUPPLEMENTAL STATE LAW CLAIM

42

## FOR VIOLATION OF MANDATORY DUTY
## (CALIFORNIA HEALTH AND SAFETY CODE §7104; GOVERNMENT CODE §§ 27471, 815.6)

174. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

175. This cause of action arises under the general laws and Constitution of the State of California. Plaintiffs have complied with the California Tort Claims Act requirements.

176. Per California Health And Safety Code §7104 and Government Code §§ 27471, 815.6, the COUNTY DEFENDANTS AND DOES were under a mandatory duty to make a reasonable attempt using reasonable diligence to notify USMAN'S next of kin – the other non-estate plaintiffs in this matter.

177. Defendants' failure to comply with the mandatory duties imposed by Cal. Govt. Code §27471 and Cal. Health and Safety Code §7104, proximately caused and contributed to plaintiffs' damages, as alleged herein.

178. Entity and/or agency DEFENDANTS are liable to PLAINTIFFS for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## THIRTEENTH CLAIM FOR RELIEF
## BY PLAINTIFFS RUKHSANA CHAUDHRY AND MOHAMMAD AFZAL CHAUDHRY AGAINST ALL CITY DEFENDANTS
## SUPPLEMENTAL STATE LAW CLAIM FOR WRONGFUL DEATH

179. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

180. This cause of action arises under the general laws and Constitution of the State of California and is brought pursuant to California Code of Civil

43

Procedure §377.10 et. seq. Section 377.60 specifically states, "[a] cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) . . . the persons ... who would be entitled to the property of the decedent by intestate succession." Per California Probate Code Section 6402(b), those persons are, "the decedent's parent or parents equally."

181. USMAN died without a spouse or surviving issue.

182. The civil rights violations alleged herein under 42 U.S.C. §1983, as well as defendants' other tortious acts and omissions, and negligence under California Civil Code §1714, form the basis for this cause of action.

183. The defendants are responsible for the wrongful death of decedent USMAN because of their deliberate, reckless, and negligent acts and omissions as alleged herein.

184. Whether or not DEFENDANT BRATTON and/or the other individual CITY defendants personally treated and/or personally knew of decedent USMAN, and/or personally knew of and disregarded decedent USMAN'S individualized needs, DEFENDANTS BRATTON and/or the other individual CITY defendants were still required to provide adequate training, supervision and resources for the care and welfare of persons such as USMAN, and are liable for their failure to do so under the California Supreme Court's decision in Fernelius v. Pierce, 22 Cal. 2d 226, 138 P.2d 12 (1943).

185. The defendants proximately caused the wrongful death of decedent USMAN because of their deliberate, reckless, and negligent acts and omissions as alleged herein.

186. As a direct, legal and proximate result of said conduct of defendants, and each of them, as previously alleged, plaintiffs RUKHSANA CHAUDHRY

44

and MOHAMMAD AFZAL CHAUDHRY sustained damages for the loss of love, companionship, comfort, affection, society, solace and moral support.

187. As a direct, legal and proximate result of said conduct of defendants, and each of them, as previously alleged, plaintiffs RUKHSANA CHAUDHRY and MOHAMMAD AFZAL CHAUDHRY also sustained damages for funeral and burial expenses for USMAN, deceased.

## FOURTEENTH CLAIM FOR RELIEF
### BY PLAINTIFFS ESTATE, RUKHSANA CHAUDHRY,
### AND MOHAMMAD AFZAL CHAUDHRY
### AGAINST ALL DEFENDANTS
### SUPPLEMENTAL STATE LAW CLAIM FOR
### CONVERSION / TRESPASS TO CHATTELS

188. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

189. This cause of action arises under the general laws and Constitution of the State of California. Plaintiffs have complied with the California Tort Claims Act requirements.

190. Defendants, and each of them, by doing the acts herein complained of, intentionally and wrongfully interfered with and /or prevented the return of USMAN'S personal property to his family and/or estate, thus actually and proximately causing Plaintiffs harm, to wit – the loss of said valuable personal effects and inability to completely grieve.

191. DEFENDANTS CITY, COUNTY AND/OR DOES, are liable to Plaintiffs for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## FIFTEENTH CLAIM FOR RELIEF

### BY ALL PLAINTIFFS EXCEPT ICUJP AND SHURA

### AGAINST ALL ENTITY DEFENDANTS

### SUPPLEMENTAL STATE LAW CLAIM

### FOR VIOLATION OF MANDATORY DUTY

### (CALIFORNIA GOVERNMENT CODE §11135(a))

192. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

193. Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

194. At all times relevant to this action, said entity Defendants received financial assistance from the State of California.

195. Through their acts and omissions described herein, Defendants have violated and continue to violate California Government Code § 11135 by unlawfully denying Plaintiff the benefits of, and unlawfully subjecting Plaintiff to discrimination under, Defendants' programs and activities.

196. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer discrimination, loss of liberty, humiliation, hardship and anxiety due to Defendants' acts and/or omissions.

197. Because Defendants' discriminatory conduct is capable of repetition and evading review, declaratory and injunctive relief are appropriate remedies Plaintiff is also entitled to compensatory damages as well as reasonable attorneys' fees and costs in filing this action.

46

## SIXTEENTH CLAIM FOR RELIEF

### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

### SUPPLEMENTAL STATE LAW CLAIM

### FOR VIOLATION OF CIVIL RIGHTS

### (CALIFORNIA CIVIL CODE §§ 51.7, 52(b) and 52.1)

198. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

199. This cause of action arises under the general laws and Constitution of the State of California. Plaintiffs have complied with the California Tort Claims Act requirements.

200. DEFENDANTS CITY, LAPD, CRUZ, ROMO, BRATTON, COUNTY, CORONER'S DEPT, HERNANDEZ, SATHYAVAGISWARAN, AND DOES, and each of them, by doing and/or causing the acts complained of in this entire Complaint, violated Plaintiffs' civil rights under the United States and California Constitutions, as well as California Civil Code Sections 52.1, 52(b) and 51.7 by doing the acts described herein above. Said acts were, among other things, in violation of Article I, Sections 2, 3, 4, 7 and 13 of the California Constitution. Each act done by each Defendant to USMAN was done because of USMAN'S Muslim religious affiliation, Pakistani ethnicity, mental/developmental disability, and/or homeless appearance. Each act done by each Defendant to each other non-estate plaintiff was done because of Muslim religious affiliation and/or Pakistani ethnicity.

201. Entity and/or agency DEFENDANTS are liable to PLAINTIFFS for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

202. DEFENDANTS, and each of them, for the respective acts and violations pleaded herein above, are liable to each Plaintiff for damages, and penalties

47

and attorneys' fees as provided in California Civil Code §§ 52(b), including but not limited to an amount no less than $25,000 to Plaintiff, per each Defendant, per each violation of right, in addition to all other remedies supported by or provided for by law. Non-governmental entity defendants are also liable to Plaintiffs for exemplary and punitive damages.

203. DEFENDANTS, and each of them, for the respective acts and violations pleaded herein above, are liable to each Plaintiff for attorneys' fees as provided in California Civil Code § 52(b)(3).

204. DEFENDANTS, and each of them, for the respective acts and violations pleaded herein above, are liable to Plaintiff for damages, penalties and attorneys' fees as provided in California Civil Code § 52.1(b). Non-governmental entity defendants are also liable each Plaintiff for exemplary and punitive damages.

## SEVENTEENTH CLAIM FOR RELIEF
### BY PLAINTIFF ESTATE AGAINST DEFENDANT CITY
### SUPPLEMENTAL STATE LAW CLAIM – ASSAULT

205. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

206. This cause of action arises under the general laws and Constitution of the State of California. Plaintiff has complied with the California Tort Claims Act requirements.

207. As described in detail herein above, Defendants ROMO, CRUZ AND DOES, assaulted USMAN by acting intentionally to place him in reasonable apprehension of immediate harmful or offensive contact by threatening and attempting to seize him, and seizing him, and had the present ability to cause such contact.

48

208. DEFENDANTS CITY AND/OR DOES, are liable to Plaintiff ESTATE for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## EIGHTEENTH CLAIM FOR RELIEF
### BY PLAINTIFF ESTATE AGAINST DEFENDANT CITY
### SUPPLEMENTAL STATE LAW CLAIM – BATTERY

209. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

210. This cause of action arises under the general laws and Constitution of the State of California. Plaintiff has complied with the California Tort Claims Act requirements.

211. Defendants ROMO, CRUZ AND DOES, and each of them, battered USMAN, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of USMAN by shooting him.

212. DEFENDANTS CITY AND/OR DOES, are liable to Plaintiff ESTATE for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## NINETEENTH CLAIM FOR RELIEF
### BY PLAINTIFF ESTATE AGAINST DEFENDANT CITY
### SUPPLEMENTAL STATE LAW CLAIM
### FOR FALSE ARREST/FALSE IMPRISONMENT

49

213. Plaintiffs incorporate all paragraphs of this complaint, as though fully set forth herein.

214. This cause of action arises under the general laws and Constitution of the State of California. Plaintiff has complied with the California Tort Claims Act requirements.

215. DEFENDANTS ROMO, CRUZ AND DOES had no probable cause or other legal justification to detain, seize or arrest Plaintiff on the date in question, nor to continue to hold him for any duration of time thereafter.

216. DEFENDANTS ROMO AND CRUZ AND DOES falsely arrested and falsely imprisoned USMAN when they seized him and handcuffed him under threat or show of authority, which USMAN was not free to disregard or ignore.

217. DEFENDANTS ROMO, CRUZ AND DOES falsely arrested and falsely imprisoned Plaintiff when they constrained USMAN'S movement within defined boundaries and/or upon show of authority that he was not free to ignore or disregard.

218. DEFENDANTS CITY AND/OR DOES, are liable to Plaintiff ESTATE for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

(ALL PLAINTIFFS)

1. A declaration that the conduct of Defendants CITY and LAPD toward persons who are or are perceived as being mentally and/or

50

developmentally disabled, as alleged herein, violated and continues to violate Section 11135(a) of the California Government Code.

2.   A preliminary and permanent injunction against Defendants CITY and LAPD as follows:

a. Ordering Defendants to cease all actions against individuals who have mental and/or developmental disabilities that have the effect of discrimination on the basis of their disability;

b. Ordering Defendants to establish a department-wide policy of non-discrimination against individuals who have mental and/or developmental disabilities;

c. Ordering Defendants to train all officers and employees to provide effective communication for individuals who have mental and/or developmental disabilities;

d. Ordering Defendants to provide all officers and employees with sensitivity training regarding persons with mental and/or developmental disabilities;

3.   A declaration that the conduct of Defendants CITY and LAPD toward persons who are or are perceived as being of Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or Muslim faith, as alleged herein, violated and continues to violate the First, Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2, 3, 4, 7 and 13 of the California Constitution.

4.   A preliminary and permanent injunction against Defendants CITY and LAPD as follows:

a. Ordering Defendants to cease all actions against individuals who are or are perceived as being of Middle Eastern or South Asian ancestry and/or dark-skinned appearance, or Muslim faith, that

51

next of kin of death within 24 hours violated and continues to violate constitutional guarantees under the First and Fourteenth Amendments to the United States Constitution, and Article I, Sections 4 and 7 of the Constitution and laws of the State of California;

8. A preliminary and permanent injunction ordering that City and County of Los Angeles, LAPD, and Coroner's Dept. take every practicable measure to notify next of kin of death within 24 hours;

9. A preliminary and permanent injunction ordering that Coroner's Dept., prior to dissecting, or otherwise altering the body of a deceased person: (i) attempt to ascertain the religious background of the deceased person, (ii) conspicuously record the religious finding along with all other initial findings; (iii) consult a religious congregational leader or authority of the religion of the deceased as to post-mortem and burial requirements, and (iv) observe those post-mortem and burial requirements to the extent a compelling public necessity does not dictate otherwise;

10. A preliminary and permanent injunction ordering that Coroner's Dept. train its personnel in the effective interpretation of factors indicative of the likely religious background of persons;

11. A preliminary and permanent injunction ordering that to the extent a compelling public necessity overrides religious dictates, Coroner's Dept. perform all post-mortem examinations in the least intrusive manner consistent with the compelling state interest;

12. A preliminary and permanent injunction ordering that Coroner's Dept. facilitate ceremonial body washing and/or preparation of the deceased on-site or at a pre-arranged off-site location(s);

13. A preliminary and permanent injunction ordering that Coroner's Dept. save all tissues, blood and other bodily material for burial with the

53

deceased or other disposition as the next of kin sees fit;

(ALL PLAINTIFFS EXCEPT ICUJP, SHURA & LA CAN)

14. For compensatory damages, including general and special damages, according to proof;

15. For punitive damages pursuant to 42 U.S.C. §1983 and California Civil Code §§ 3294 and 52.1(b), and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each non-governmental entity Defendant;

16. For statutory damages, according to proof,

17. For prejudgment interest according to proof;

18. For reasonable attorney fees pursuant to 29 U.S.C. §§ 794, 794a, 42 U.S.C. §§ 1983, 1986, 1988, 12205, 12133, California Civil Code §§ 52.1, 52(b)(3), California Code of Civil Procedure § 1025.1, and any other applicable provisions;

19. For costs of suit; and

20. For such further relief which is just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury in this action.

Respectfully submitted,

DATE: August 3, 2009

Olu K. Orange, Esquire
Attorney for the Plaintiffs

54

## **<u>JURY DEMAND</u>**

Plaintiffs hereby demand trial by jury in this action.


Respectfully submitted,

DATE: August 3, 2009


Olu K. Orange, Esquire
Attorney for the Plaintiffs

//

55

Second Amended Complaint for Damages

1 | **STATE OF CALIFORNIA**       }
2 | **COUNTY OF LOS ANGELES**      }   ss.

3      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and
4 not a party to the within action; my business address is: 3435 Wilshire Blvd, Suite 2900, Los
Angeles, California 90010.

5 On August 4, 2009, I served the following Documents: SECOND AMENDED COMPLAINT
6 FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF, EXHIBITS (A-
7 Death Certificate, B-Declaration of Mohammad Afzal Chaudhry, C-Declaration of
Rukhsana Chaudhry) upon the interested parties in this action in addressed as follows:

8

| **Craig J. Miller, Esq.** | **Patricia E. Ellyatt, Esq.** |
|---|---|
| Los Angeles City Attorney's Office | Maranga * Morgenstern |
| 200 North Main Street, 6th Floor | 5850 Canoga Avenue, Suite 600 |
| Los Angeles, CA 90012 | Woodland Hills, California 91367 |
| 213-978-8785 (fax) | Fax (818) 587-9147 |
| craig.miller@lacity.org | pellyatt@marmorlaw.com |

[ ]   **(Via Facsimile [State]) TO ANSWERING PARTY ONLY** By transmitting from my business address a true copy thereof from my sending facsimile machine addressed to each individual at its facsimile telephone number set forth above at the time indicated on the transmission verification line thereon.

[X]   **(By Electronic Mail )** I transmitted the above-described materials in PDF format via an e-mail message having a subject header including the case name and number in the instant case and an attachment containing the above described materials.

[ ]   **(Via U.S. Mail [Federal or State] )** I am readily familiar with the practice for the collection and processing of correspondence for mailing with the UNITED STATES POSTAL SERVICE; such envelope will be deposited with the UNITED STATES POSTAL SERVICE on the above date according to ordinary business practices.

**Executed on August 4, 2009, at Los Angeles, California.**

[X]   **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   **(Federal)** I declare that I am employed in the office of a member of the bar of this Court at whose discretion the service was made.

Olu K. Orange, Esq.