UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1592 RGK (RZx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | *RUKHSANA CHAUDHRY, et al. v. CITY OF LOS ANGELES, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order re: Defendants City's and Romo's Motion for Summary Judgment (DE 120)

I.   **FACTUAL BACKGROUND**

The facts of this case are alleged as follows:

Mohammad Usman Chaudhry ("Usman") was a 21 year-old man of Pakistani descent, and he suffered from autism. He was prone to wandering away from home, and had at least two previous contacts with LAPD officers under such circumstances. In September, 2004, after Usman wandered away from home, Usman's mother filed a missing persons report with LAPD, identifying Usman as a dependent adult and listing the family's address and telephone number. Usman's father worked with the Sheriff's Department to compose and print a missing person leaflet for distribution identifying Usman as mentally challenged. This report was assigned NCIC # M144336830 and FCN # 2320425300075 and "distributed to all local law enforcement agencies." (Second Am. Compl. ¶ 88.) On October 27, 2004, the LASD closed this missing person report because Usman had been found.

At 4:00 am on March 25, 2008, Los Angeles police officers found Usman sleeping in the front yard of an apartment building. The officers "woke him, handcuffed him, checked his identification visually and by mobile terminal/dispatch, and shot [him] multiple times[,] killing him." (Second Am. Compl. ¶ 26.)

Usman's body was taken to the Los Angeles County Coroner's office. The LAPD's Scientific Investigation Division ("SID") collected a bag of Usman's belongings after the shooting so the Force Investigation Division could conduct an investigation of the shooting. Although Usman's wallet was in his pocket, Usman's parents were not notified of their son's death until twenty-one days had passed. Usman's family is Muslim. Muslims strive to bury the deceased as soon as possible after death, but no later than three days. Specific procedures are prescribed with respect to sanitation, timing, and sequence. Because of the passage of time, Usman's parents could not obey Islam's prescribed burial procedures for their son.

Case 2:09-cv-01592-RGK-RZ Document 296 Filed 12/21/10 Page 2 of 8 Page ID #:5789

On July 10, 2008, Usman's parents, with their legal counsel, met with a detective from the Force Investigation Division. They wished to know their son's last words and requested the return of their son's belongings. Usman's belongings have not been returned.

The plaintiffs in the current action are: (1) Usman's estate ("Estate"); (2) Usman's parents ("Chaudhrys"); (3) Usman's brother and sister; (4) Interfaith Communities United for Justice and Peace ("ICUJP"); (5) Islamic Shura Council of Southern California ("SHURA"); and (6) Los Angeles Community Action Network ("LA CAN"). ICUJP is an organization supporting faith leaders from several different religions. SHURA is an organization of mosques and Muslim groups serving Southern California. LA CAN is a community action organization engaged in advocacy addressing homelessness issues in Los Angeles. The defendants are City of Los Angeles, Los Angeles Police Department, and William Bratton (collectively, "City"); Officer David Romo ("Romo"); Officer Joseph Cruz ("Cruz"); County of Los Angeles ("County"); Los Angeles County Coroner Department ("LACCD"); Anthony Hernandez ("Hernandez") and Lakshmanan Sathyavagiswaran ("Sathyavagiswaran").

The SAC alleges claims for relief pursuant to (1) Title II of the Americans With Disabilities Act ("ADA"); (2) Rehabilitation Act of 1973; (3) 42 U.S.C. § 1983 ("§ 1983"); (4) 42 U.S.C. §§ 1985 ("§ 1985") and 1986s ("§ 1986"); (5) Negligence; (6) Intentional Infliction of Emotional Distress ("IIED"); (7) Government Code § 27471 ("§ 27471"); (8) Wrongful Death; (9) Conversion; (10) California Government Code § 11135 ("§ 11135"); (11) Civil Rights under the California Constitution and California Civil Code; (12) Assault and Battery; (13) False Arrest/False Imprisonment.

On April 16, 2010, the Court ruled on a Motion to Dismiss filed by the City and Romo. Based on the Court's ruling, the only remaining claims against the City are (1) Violation of ADA; (2) Violation of the Rehabilitation Act; (3) Violation of § 1983 - 4th Amendment; (4) Wrongful Death; (5) Conversion; (6) Assault and Battery; and (7) False Arrest/False Imprisonment. The only remaining claims against Romo are (1) Violation of § 1983 - 4th Amendment; (2) Wrongful Death; and (3) Conversion. Currently before the Court is the City's and Romo's Motion for Summary Judgment as to those remaining claims. For the following reasons, the Court **grants in part and denies in part** the motion.

## II.  JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56©), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## III.  DISCUSSION

The City and Romo argue that the Court should grant summary judgment as to the remaining claims against him: (1) Violation of ADA; (2) Violation of the Rehabilitation Act; (3) Violation of § 1983 - 4th Amendment; (4) Wrongful Death; (5) Conversion; (6) Assault and Battery; and (7) False Arrest/False Imprisonment. The Court addresses each claim in turn.

### A. Violation of ADA and Rehabilitation Act Against the City

The Estate's argument that the City violated the ADA and Rehabilitation Act is twofold: (1) the City's policing program disproportionately burdened people with disabilities because it did not have a means by which field officers could access information regarding an individual's mental disability; and (2) even in the face of knowing that an individual has a mental disability, the City had no system in place that would allow field officers to handle an encounter with such an individual in a manner that reasonably accommodated his disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on an ADA claim, the plaintiff must prove the following: (1) a qualified individual with a disability (2) was excluded from participation in or denied the benefits of a public entity's services or otherwise discriminated against by the public entity; and (3) such exclusion or discrimination was by reason of his disability. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th cir. 1997).

The parties do not dispute that Usman was a qualified individual with a disability. While the Ninth Circuit has held that local law enforcement agencies' activities fall within the ADA, it has not addressed the specific question of whether the ADA applies to investigative stops or arrests by police officers,. *Lee v. City of L.A.*, 250 F.3d 668, 691 (9th Cir. 2001)(citing *Gorman v. Bartch*, 152 F.3d 907, 912-13 (9th cir. 1998) (holding that transportation of an arrestee to a police station is a "service" under the ADA)).

The Tenth Circuit has set forth two theories in applying the ADA in the context of arrests. *See Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999). The first is where an officer has wrongly arrested an individual with a disability because the officer misperceived the effects of that disability as criminal activity. *Id*. at 1220. The second is where the crime is unrelated to the disability, and the officer has failed to reasonably accommodate the individual's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity during that process than other arrestees. Even if the Ninth Circuit adopted this application of the ADA, only the second theory would apply to the current action, and the Court finds that the facts of the case do not support such a claim.

As to the Estate's first argument, there is no law in this or other circuits that interprets the ADA to mandate a duty to public entities to employ a system for identifying individuals with mental disabilities in the law enforcement setting. In fact, while such a system may promote more effective policing activities, it would not, by itself, provide individuals with mental disabilities more access to such activities.

As to the Estate's second argument, the City has presented evidence that the LAPD provides training for all levels of law enforcement officers with respect to recognizing and engaging individuals with developmental disabilities. (Pannel Decl., ¶ ¶ 1-9.) More significantly, however, the Court finds no facts in the record that support the contention that the officers did not engage in a manner that was reasonably accommodating to a person with a mental disability.

In light of the foregoing, the Court **grants** summary judgment in favor of the City as to the

Estate's claims for Violation of the ADA and Rehabilitation Act.

  B.  **Violation of § 1983 Against the City and Romo**

The Estate has also alleged § 1983 claims against Romo, in his individual capacity, and the City, pursuant to *Monell*.

  1.  *Romo*

As to the Estate's unlawful detainment allegation, for the same reasons discussed in the Court's Order re Defendant Cruz's Motion for Summary Judgment, section III.A.1., the Court finds that there was reasonable suspicion for any detainment of Usman.

As to the Estate's excessive force allegation, the undisputed sequence of events are as follows: (1) both Cruz and Romo approached Usman, and Cruz began asking questions (Romo Decl., ¶¶ 3-5); (2) upon Cruz's request, Romo left to move the police car, at which time he could not hear any conversation between Cruz and Usman (Romo Decl. ¶ 6); (3) when Romo returned, he believed he heard Usman say he was on probation or parole (Romo Decl., ¶ 7); (4) Cruz gave Romo Usman's identification card, and Romo returned to the patrol car to run Usman's through the Mobile Digital Computer (Romo Decl. ¶ 7); (5) after Romo ran the search, he exited the patrol car and heard three gun shots (Romo Decl. ¶ 8); (6) Romo ran back to where he had been standing, unholstered his weapon and observed Cruz fire a fourth round, but could not see what was going on (Romo Decl., ¶ 8).

Based on these undisputed facts, no reasonable juror could find that Romo engaged in any force conducted on Usman. The Estate argues, however, that Romo's liability is also based on his failure to intervene. The Court finds this argument unavailing.

Police officers have an affirmative duty to intervene to protect those in custody from constitutional abuses by their fellow officers. *See United States v. Reese*, 2 F.3d 870, 887-88 (9th Cir. 1993); *Ting v. United States*, 927 F. 2d 1504, 1511 (9th Cir. 1991). This duty is not triggered by an officer's mere presence at the scene. Rather, the officer must have known, or should have known, that it was likely that abusive force would be used. *See Ting*, 927 F.2d at 1511-12. Also, the officer's failure to intervene must have been the cause in fact of the plaintiff's injuries. *See Ting*, 927 F.2d at 1512. Moreover, even if those elements are present, an officer may be held liable for failing to intercede only if he had a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

The Estate's evidence as to this claim revolves around an earwitness, who heard a voice saying, "But, you didn't have to do that," after the last gun shot. (Brook Decl., ¶¶ 4-6.) The Estate argues that because Usman was deceased or almost deceased, the reasonable inference is that Romo made the statement. According to the Estate, this fact indicates that Cruz did something Romo thought was unnecessary, but failed to stop Cruz. The Court finds the Estate's argument too speculative as to who uttered the words. Also, in light of the undisputed evidence discussed above, the Estate's evidence from the earwitness fails to raise a triable issue as to whether Romo knew that Cruz was likely to have use abusive force, and whether he had a realistic opportunity to intervene.

Accordingly, the Court **grants** summary judgment in favor of Romo as to the Estates's § 1983 claim against him.

2. *The City*[1]

Under *Monell*, a municipality is liable under § 1983 if the plaintiff establishes that the municipality's policy or custom was the moving force behind the alleged constitutional violation. *See city of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). In the current matter, the only remaining constitutional claim applicable to the City is a claim for excessive force against Cruz.

The City has introduced evidence that during the relevant time period, the LAPD was in compliance with Fourth Amendment training requirements imposed by a Consent Decree. (City's Request for Judicial Notice, Ex. 2.) In response, the Estate has introduced evidence supporting its contention that the investigation into Usman's death was flawed. (*See* Pl.'s Statement of Genuine Issues, OPP 60-63.) However, the Estates evidence fails to raise a triable issue, as it fails to show how this single flawed investigation constituted a policy or custom, or ratification of a policy of custom, that led to excessive force committed against Usman by Cruz.

The Court **grants** summary judgment in favor of the City as to the Estate's § 1983 claim.

C. **Wrongful Death Against the City and Romo**

In the SAC, the Chaudhrys allege a claim against Romo and the City for wrongful death. As to Romo, for the same reasons stated in Section III.B.1, the Court **grants** summary judgment as to the Chaudhry's claim for wrongful death against Romo.

As to the City, a public entity's potential liability for another's death arises under the California Tort Claims Act, Government Code, §§ 810, et seq., and has two sources: (1) liability based on the public entity's own conduct and legal obligations; and (2) liability, based on respondeat superior principles, for the misconduct of its employees that occurred in the scope of their employment. *Zelig v. County of Los Angeles*, 27 Cal. App. 4th 1112, 1128 (2002). The Tort Claims Act draws a clear distinction between the liability of a public entity based on its own conduct, and the liability arising from the conduct of a public employee. *Zelig*, 27 Cal. App. 4th at 1128. The Tort Claims Act provides that a public employee generally is liable for an injury caused by his or her act or omission "to the same extent as a private person" (Cal. Gov. Code, § 820(a)) and that, when the act or omission of the public employee occurs in the scope of employment the public entity will be vicariously liable for the injury (Cal. Gov. Code, § 815.2). However, the Tort Claims Act contains no provision providing that a public entity generally is liable for its own conduct or omission to the same extent as a private person or entity. *Zelig*, 27 Cal. App. 4th at 1128. Rather, the Tort Claims Act provides that a public entity is not liable for an injury "[e]xcept as otherwise provided by statute ..." Cal. Gov. Code, § 815. Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities but the Tort Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal. 4th 820, 829 (1993).

As discussed in Section III.B.2, above, the record is devoid of evidence of the City's direct liability for Usman's death. As such, the only remaining issue is potential vicarious liability. Although the Court has granted summary judgment in favor of Romo as to the excessive force claim, the Court has found a triable issue of material fact as to Cruz. (*See* Order re: Defendant Cruz's Motion for

---

[1] It appears that the Estate has folded allegations against Former LAPD Chief William Bratton ("Bratton") into its *Monell* claim. However, court records show no indication that the plaintiffs ever served Bratton, or that Bratton ever answered the complaint. Therefore, the Court will not consider any evidence going to any claims against Bratton, in either his individual or official capacities.

Summary Judgment.) Therefore, the Court **denies** the City's motion as to the claim for wrongful death, but only as it relates to the issue of vicarious liability.

### D. Conversion Against the City and Romo

The Estate and Chaudhrys also allege a claim against Romo and the City for conversion. In the motion, Romo argues that he never gathered or booked any of Usman's personal property, and never had possession or control of Usman's property. The Chaudhrys have failed to introduce evidence raising a disputed issue as to this claim. Therefore, the Court **grants** summary judgment in favor of Romo as to this claim.

As to the City, Government Code sections 821.6 ("§ 821.6") and 815.2 immunize the City and its employees "from liability for the actions or omissions of the investigating officers if: (1) the officers were employees of the County; (2) [the plaintiffs'] injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the scope of their employment." *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1209 (1994).

Courts have held that the institution and prosecution of judicial proceeding in § 821.6 extends to acts taken during an investigation prior to the institution of a judicial proceeding because investigations are an essential step toward the institution of formal proceedings. *Amylou R.*, 28 Cal. App. 4th at 1209-1210. It also extends to immunize against claims by those suffering injury who are not the target of the prosecution. *Id*. at 1214. The § 821.6 immunity protects not only against claims for malicious prosecution, but "extends to other causes of action arising from conduct protected under the statute...," and applies to conduct that occurred after the close of the proceeding. *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007); *Cappuccio, Inc. v. Harmon*, 208 Cal. App. 3d 1496 (1989).

Here, the City has introduced evidence that the LAPD's Scientific Investigation Division collected a bag of Usman's belongings for the Force Investigation Division ("FID") to conduct a criminal and administration investigation into the shooting. The purpose of the investigation was to determine whether criminal charges should be filed against the officer(s). (Vanina Decl. ¶ 1-3, 7.) On July 10, 2008 the Chaudhrys met with Detective Vanina from FID and requested Usman's belongings. (Afzal Chaudhry Dep., at 120:5-121:8. Vanina Decl. ¶ 6.) At the time, FID had not yet completed its investigation. (Vanina Decl. ¶ 6.) Since that time, the Chaudhrys have not made any other requests to LAPD for the return of the property. (Afzal Chaudhry Dep. at 96:5-98:25; 155:21-24; 174:12-184:22; 196:10-24; Rukhsana Chaudhry Dep. at 192: 9-14.)

Based on the evidence above, the Court finds that Usman's belongings were collected as part of the administrative and criminal investigation into the shooting. Therefore, the § 821.6 immunity applies. Furthermore, to the extent the Chaudhrys allege that the City has wrongfully kept Usman's belongings after the investigation concluded, California courts have stated that the immunity is dependent not on when the acts occurred, but whether they are causally connected to the investigation. *Cappuccio*, 208 Cal. App. 3d at 1498-1500. Here, the collection and retention of Usman's belongings were part of the investigation process, even after the decision was made not to file charges against the police officers. Therefore, the acts are immunized by § 821.6. Moreover, the Chaudhrys have failed to present evidence disputing the fact that they have not requested return of the property since July 10, 2008, when the investigation was still ongoing. As such, the Court **grants** the City's motion for summary judgment as to this claim.

### E. Assault and Battery Against the City

The Estate alleges claims for Assault and Battery against the City. As discussed in Sections III.B.2 and III.C., the Estate has failed to present evidence of the City's direct liability for Usman's injury. As such, the only remaining issue is potential vicarious liability. Although the Court has granted summary judgment in favor of Romo as to the excessive force claim, the Court has found a triable issue of material fact as to Cruz. (*See* Order re: Defendant Cruz's Motion for Summary Judgment.) Therefore, the Court **denies** the City's motion as to the claims for assault and battery, but only as they relate to the issue of vicarious liability.

### F. False Arrest/False Imprisonment Against the City

Again, there is no evidence presented by the Estate that raises a triable issue as to the City's direct liability for Usman's injury. As to vicarious liability, the Court has found that, to the extent there was a stop and detainment, the undisputed facts and rational inferences from those facts support a finding of reasonable suspicion. (*See* Section III.B.1., *supra*; Order Re Defendant Cruz's Motion for Summary Judgment, Section III.A.1.) The Court specifically found articulable facts supporting a reasonable suspicion that Usman was trespassing. *Id*. Therefore, the officers were immune because there were acting within the scope of their authority. As such, the Court **grants** the City's motion for summary judgment as to this claim.

## IV. EVIDENTIARY OBJECTIONS

To the extent the Court has relied on evidence to which the parties have objected, the Court overrules the parties' objections to that evidence.

## V. CONCLUSION

In light of the foregoing, the Court hereby **grants in part and denies in part** the City's and Romo's Motion for Summary Judgment. Specifically, the Court **grants** summary judgment in favor of Romo as to all remaining claims against him. As to the City, the Court **grants** summary judgment in favor of the City on all remaining claims, except the claims for Wrongful Death and Assault and Battery. As to those claims, the Court **denies** summary judgment, but only as to the issue of vicarious liability.

**IT IS SO ORDERED.**

:

Initials of Preparer   slw